IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARTA KOROTYNSKA        *

                                     *

        v.                  *     Civil No. JFM-04-3601

                                     *

METROPOLITAN LIFE INSURANCE CO. *

                                 *****

MEMORANDUM

Marta Korotynska has brought this action on her own behalf and on behalf of others similarly situated against Metropolitan Life Insurance Company ("MetLife") under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101, et seq. ("ERISA").  The action was originally instituted in the United States District Court for the Southern District of New York but was transferred to this court under 28 U.S.C. § 1404.

MetLife has filed a motion to dismiss.  The motion will be granted.

I.

Korotynska was employed by Montgomery Community College and became insured under a group long-term disability policy issued by MetLife to the college.  She alleges that in August 2000, she became disabled because of severe and disabling chronic pain, degenerative disc problems and fibromyalgia.  She filed a claim for short-term disability benefits through her employer, and the claim was administered by MetLife.

After the short-term disability benefits were exhausted, MetLife admitted liability under her claim for long-term disability benefits and paid her benefits for two years beginning in August 2001.  However, by letter dated August 20, 2003, MetLife advised Korotynska that her long-term disability

benefits would be terminated effective August 19, 2003, based upon MetLife's in-house review of her medical records and the results of a functional capacity evaluation.  In March 2004, Korotynska appealed MetLife's decision to terminate her long-term disability benefits.  On or about June 3, 2004, MetLife upheld the decision denying her benefits.

Korotynska no longer is employed by Montgomery Community College or otherwise covered by a MetLife disability insurance plan.

In the present action Korotynska expressly disavows any intent to "seek the review of any individual adverse benefit determination under § 502(a)(1)(B)" of ERISA.  (Opp'n Mot. Dismiss at 4) Rather, she makes a systemic challenge to MetLife's practices, policies and procedures and seeks injunctive and other equitable relief under § 502(a)(3) to stop what she alleges is a series of on-going violations of ERISA committed by MetLife.  According to Korotynska, "MetLife saves money and increases its profits and shareholder value through . . . [a] scheme that breaches its fiduciary duties to claimants.  The company systemically engages in a number of inappropriate and abusive claim practices, including, but not limited to:

> a.  Targeting types of claims that have self-reported symptoms, lack of objective medical findings supporting the claims, or an undefined diagnosis, without due regard for the actual impact of the claimants' conditions on their ability to work;

> b.  Targeting low-benefit claimants for denial and/or termination with the expectation that such claimants will not have the wherewithal or financial incentive to engage counsel to pursue their rights, or have the physical or emotional fortitude to fight over these benefits;

> c.  Employing claim practices that ignore treating physician opinions, ignore subjective complaints of pain, and/or ignore the effects of medications upon claimants' abilities to work;

2

d.  Failing to consider in its handling of these claims, pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iv), all comments, documents, records and other information submitted by the claimant relating to the claim;

e.  Requesting inappropriate, unnecessary and burdensome materials from claimants, all in furtherance of delaying claims determinations;

f.  Designing a system in which claimants cannot receive a full and fair review of their claims, by virtue of its reliance upon Medical Examinations from Interested Physicians (called "Independent" Medical Examinations), Functional Capacity Evaluations ("FCE's") and/or peer reviews;

g.  Utilizing the services of professional entities that perform medical and/or vocational reviews, including but not limited to National Medical Review, that are biased against claimants based upon financial incentives provided by Met Life;

h.  Developing and utilizing claim management plans that are designed to terminate benefits not based upon the actual condition of claimants, but, rather, upon duration guidelines used to determine when to terminate claims;

i.  Developing claim management plans to deny or terminate claims without due regard for the actual impact of the claimants' conditions on their ability to work; and

j.  By [sic] employing numerous other practices that pressure claims handling personnel into denying or terminating legitimate claims.


II.

The first question presented is whether Korotynska has standing to bring this action.  That question arises because, as stated above, in her opposition memorandum she represents that "[t]he Amended Complaint unequivocally does not seek the review of any individual benefit determination

under § 502(a)(1)(B)."[1]  (Opp'n Mot. Dismiss at 4)  MetLife interprets this representation as a renunciation by Korotynska of any claim for benefits and, on the basis of that premise, contends that she lacks both statutory and constitutional standing.

If MetLife's characterization were correct, its argument would be well founded.  In order to bring an action under § 502(a)(1), Korotynska would have to be either a "beneficiary" or a "participant."  Because (assuming the accuracy of MetLife's characterization) Korotynska no longer is seeking benefits, her status as a "beneficiary" would be questionable.  Likewise, it is doubtful that Korotynska would qualify as a participant because, in light of her assumed renunciation she does not have "a colorable claim as to benefits" - one of the requirements for "participant" status.  *Firestone Tire & Rubber Co. v. Bruch*, 589 U.S. 101, 117 (1989).[2]  Moreover, assuming that Korotynska does qualify as a "beneficiary" or "participant" under § 502, her assumed renunciation would negate her constitutional standing because she no longer would have suffered any injury that could be redressed by the equitable relief she is requesting.  *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Even if MetLife's practices were reformed as she demands, reprocessing of her claim under the new practices would provide her with no relief if she had previously disavowed recovery of any benefits.

---

[1]Korotynska similarly represents in an earlier part of her opposition memorandum that "[t]he Amended Complaint does not seek an individualized review of any particular adverse benefit determination."  (Opp'n Mot. Dismiss at 1)

[2]Korotynska, who no longer is employed by Montgomery Community College or otherwise insured by MetLife, also has not demonstrated that she has a "reasonable expectation of returning to covered employment," the alternative requirement for determining qualification as a "participant."  *Firestone*, 589 U.S. at 117.

That said, MetLife's argument is unavailing because the premise from which it proceeds is erroneous. Korotynska has not entirely renounced her claim for benefits but only for an individualized review of MetLife's denial of her claim under § 502(a)(1)(B). She continues to assert that she has a meritorious claim for benefits and, if she were to prevail in this action and obtain injunctive and reformatory relief, she would be entitled to have her claim processed anew under the reformed practices ordered by the court.

It would, of course, be possible that even under the reformed practices Korotynska's benefit claim would be found to be meritless and be properly denied. That possibility does not, however, negate her standing in this action. The wrong she currently is alleging is that she was subjected by MetLife to claims practices that are in violation of ERISA. MetLife has not suggested in its motion papers that Korotynska's claim was not "colorable," and that is all that is required to qualify her as a "beneficiary" or "participant" under § 502(a). *Firestone*, 589 U.S. at 117. Further, the harm she presently is alleging - being subjected to an illegal claims process - would be redressable by an injunction ordering that her benefit claim be processed under reformed procedures. Therefore, Korotynska has standing to bring this action.

III.

In Count I of the Amended Complaint, Korotynska asserts a claim for "Breach of Fiduciary Duty Under ERISA." This claim raises the question whether a plaintiff who, like Korotynska, could have sought recovery for denial of benefits under § 502(a)(1)(B) may, alternatively, bring an action seeking injunctive relief to reform the benefit claim process under the "catch-all" provision of § 502(a)(3).

In *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001), the

Second Circuit held that claims may be brought simultaneously under § 502(a)(1)(B) and § 502(a)(3).

Moreover, in a case directly on point, Judge Cote in the Southern District of New York has held that a

systemic challenge to the practices, policies and procedures followed by ERISA fiduciaries in the

handling of long-term disability claims may be asserted in an action brought under § 502(a)(3).  Judge

Cote specifically rejected a contention made by defendants that the plaintiffs were required to assert

their claims under § 502(a)(1)(B).  *Keir v. UnumProvident Corp.*, No. 02-CIV-8781, 2003 WL

2004422, at *1(S.D.N.Y. Apr. 29, 2003).  *See also Rawls v. UnumLife Ins. Co.*, 219 F. Supp. 2d

1063 (S.D. Cal. 2002).

The Fourth Circuit, however, albeit in an unpublished opinion, has held that a plaintiff may not

seek relief under § 502(a)(3) where relief is available under § 502(a)(1)(B).  *Dwyer v. Met. Life Ins.

Co.*, No. 00-1514, 2001 WL 94749, 4 Fed. Appx. 133 (4th Cir. Feb. 5, 2001).[3]  *See also Dunbar

v. Orbital Sciences Corp. Disability Plan*, 265 F. Supp. 2d 572, 588 (D. Md. 2003) ("[W]here a

plaintiff is entitled to seek relief under ERISA for the wrongful denial of disability benefits, claims against

a plan administrator for breach of fiduciary duty are foreclosed.").   Korotynska seeks to distinguish

*Dwyer* on the ground that there (as in *Devlin*) the plaintiff asserted claims both under § 502(a)(1)(B)

and § 502(a)(3), whereas here she has specifically represented that she is not seeking an individualized

determination under § 502(a)(1)(B).  Nothing in *Dwyer*, however, suggests that the case turned on that

---

[3]Although citation of unpublished opinions is disfavored by the Fourth Circuit, such cases may
be cited where "an unpublished disposition . . . has precedential value in relation to a material issue in a
case and . . . there is no published opinion that would serve as well."  *See* 4th Cir. R. 36(c).

point.

If I were writing on a clean slate, I might be inclined to follow the decision in *Keir* and hold that Korotynska may bring this action under § 502(a)(3). Her suit appears to be authorized under the literal language of that section. It provides that an action "may be brought . . . by a participant . . . [or] beneficiary . . . (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to address such violations or (ii) to enforce any provisions of this title or the terms of the plan." The only question raised by this language is whether relief would not be "appropriate" under § 502(a)(3) because Korotynska may bring an action to recover benefits under § 502(a)(1)(B). *See Dwyer*, 4 Fed. Appx. at 142; *cf*. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

As a technical matter, to the extent that Korotynska is seeking injunctive relief, consideration of the word "appropriate" may not itself be appropriate because it appears only in subparagraph (B) relating to "other appropriate equitable relief." It does not appear in subparagraph (A) which authorizes a suit "to enjoin any action or practice which violates any provision of this title." More fundamentally, in light of the fact that judicial review under § 502(a)(1)(B) ordinarily is based entirely upon the administrative record under a deferential standard of review, it is unlikely that in an action brought under that section a factual record would be established concerning the defendant's allegedly abusive review process. In that regard, I take judicial notice of the fact that almost invariably in actions brought under § 502(a)(1)(B), defendants take the position that no discovery should be taken.[4]

---

[4]Of course, in an individual case, the trial judge, if persuaded that a plaintiff has made a sufficient showing of alleged systemic abuse, might order broad discovery for the purpose of

*Dwyer*, however, is on point, and I am constrained to follow it.  Accordingly, I hold that under the present state of the law in this circuit, Korotynska may not maintain an action under § 502(a)(3) because she has available to her the alternative remedy of bringing an action under § 502(a)(1)(B).[5]

IV.

In Counts II and III Korotynska purports to assert claims for violations of 29 C.F.R. § 2960.503-1(b)(iii)(1984) and § 2960.503-1(b)(3)(2000), two regulations the Secretary of Labor has promulgated under ERISA.  The parties have briefed the question of whether ERISA confers a private

_____

determining whether the administrative record was tainted by biased practices.  It is questionable, however, whether that approach is preferable to a direct challenge to a defendant's practices in an action brought under § 502(a)(3).  It is very likely that if such discovery were ordered, the defendant would attempt to keep the inquiry focused upon the plaintiff's individual claim, leading to interminable discovery disputes.  Moreover, the effect of any judgment entered in such a case would itself raise difficult legal issues.  In the event that the plaintiff prevailed and it was determined that the defendant's practices did violate ERISA, perhaps the finding would have collateral estoppel effect and require a reform of the defendant's practices.  However, a defendant might take a contrary position.  Moreover, if the defendant were to prevail and its practices were found not to be in violation of ERISA, the judgment would be of even more limited value.  Because of the absence of mutuality, the defendant would not be able to invoke the doctrines of collateral estoppel or res judicata to prevent another claimant from bringing another challenge to its practices.  This potential for costly relitigation of complex and difficult issues would be contrary to the public interest in efficient judicial administration (as well, perhaps, to the private interest of the defendant).  Moreover, "the prosecution of separate actions by . . . individual members of . . . [a potential] class would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."  *See* Fed. R. Civ. P. 23(b)(1)(A).  Therefore, although expensive in the short run, a direct challenge to the legality of a defendant's practices under § 502(a)(3) brought on a classwide basis might ultimately both conserve public and private resources and provide an effective means to address the alleged systemic abuses in a defendant's claims review process.

[5]I also note that as a matter of efficient judicial administration, this is an issue best resolved on the front end of the litigation.  If I were to deny defendant's motion, extensive discovery and briefing on summary judgment and class action issues would ensue.  The cost thus incurred would be for naught if, at the end of the day, the Fourth Circuit were to hold that the action should have been dismissed at the outset.

right of action upon a participant or beneficiary to bring an action for a regulatory violation. They have

focused primarily upon the Supreme Court's decision in *Massachusetts Mutual Life Ins. Co. v.*

*Russell*, 473 U.S. 134, 145-48 (1985), where the court held that beneficiaries and participants do not

have a private right of action to assert a claim for extracontractual damages allegedly resulting from a

regulatory violation. Korotynska argues that *Russell* is distinguishable because it was limited to the

issue of extracontractual damages; MetLife contends that application of the four-factor analysis

established in *Cort v. Ash*, 422 U.S. 66, 78 (1975), which led the court to conclude that the plaintiff in

*Russell* did not have an implied private right of action, is equally applicable here.

 As I read Counts II and III of the Amended Complaint, the issue as framed by the parties in

their briefing is an academic one. The two counts are titled, respectively, "Violation of 29 C.F.R. §

2560.503-1(b)(iii) (1984)" and "Violation of 29 C.F.R. § 2560.503-1(b)(3)(2000)." However, each

of the counts contains a paragraph in which Korotynska avers that the alleged regulatory violations

entitle her to obtain equitable relief under § 502(a)(3). Thus, I do not read Counts II and III as being

based upon a private right of action under the Secretary's regulations, but, rather, as reciting those

regulations as standards a court should consider in an action brought under § 502(a)(3) in determining

whether a beneficiary's or participant's rights established by ERISA have been violated.[6]

V.

 Korotynska's final claim is that MetLife has engaged in activities that have interfered with her

rights to attain benefits to which she is entitled or will be entitled in the future in violation of § 510. That

---

 [6]I note that in *Russell* the Supreme Court specifically remarked that plaintiff "expressly
disclaims reliance on § 502(a)(3)." 473 U.S. at 139 n.5.

9

section makes it unlawful for "any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Id*.

Again, a Fourth Circuit case is dispositive of Korotynska's claim.  In *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 420-21 (4th Cir. 1993), the court, while rejecting the argument that § 510 applies only to employers, held that a plaintiff must show that an insurer has acted with the intent of interfering with a future right under § 510.  Here, because Korotynska is no longer employed by Montgomery Community College or otherwise insured by MetLife, she has made no allegations from which it can be inferred that MetLife has acted with intent to interfere with any future right she might possess.

A separate order granting defendant's motion to dismiss is being entered herewith.


Date: April 28, 2005                /s/ _____
                                    J. Frederick Motz
                                    United States District Judge